**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **ROBERT TAYLOR AS NEXT** | § | |
| **FRIEND OF LOGAN J. TAYLOR,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | **CIVIL ACTION NO.** |
| **V.** | § | _____ |
| | § | |
| **CHAMPION EMS, GOOD** | § | **JURY DEMANDED** |
| **SHEPHERD HEALTH SYSTEM, INC.** | § | |
| **d/b/a GOOD SHEPHERD MEDICAL** | § | |
| **CENTER, JOSHUA D. ALLEN, D.O.,** | § | |
| **MARSHALL/HARRISON COUNTY** | | |
| **AMBULANCE SERVICE,** | | |
| | | |
| **Defendants.** | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Now comes Plaintiff Robert Taylor ("Plaintiff") as Next Friend of Logan James Taylor ("Logan" or "Logan Taylor"), and files this, his Original Complaint complaining of and about Defendants Champion EMS ("Champion"), Good Shepherd Health System, Inc. d/b/a Good Shepherd Medical Center ("Good Shepherd"), Joshua D. Allen, D.O. ("Allen"), and Marshall/Harrison County Ambulance Service ("Marshall/Harrison"), individually and/or as joint tortfeasors (collectively referred to as "Defendants"), and for causes of action would respectfully show unto the Court the following:

# I.

## PARTIES

1.      Plaintiff, who is appearing in this lawsuit solely in a representative capacity as Next Friend of Logan Taylor, is an individual who is a citizen of the State of Texas residing at 3318 Mapleleaf Lane, Dallas, Texas 75233 in Dallas County, Texas.

2.      Upon information and belief, Defendant Champion is a Texas professional association doing business in Texas, with its principal office and registered agent in Gregg County, Texas. Defendant Champion may be served with process by delivery of the Summons to its registered agent, Capitol Corporate Services, Inc., at 800 Brazos, Suite 400, Austin, Texas 78701, or wherever found.

3.      Upon information and belief, Defendant Good Shepherd is a corporation or other legal entity doing business in Texas, with its principal office and registered agent in Gregg County, Texas. Defendant Good Shepherd may be served with process by delivery of the Summons to its registered agent, Steve Atlmiller, at 700 E. Marshall Ave., Longview, Texas 75601, or wherever found.

4.      Upon information and belief, Defendant Allen is an individual resident of the State of Texas who regularly provides medical services and conducts business in the State of Texas. Defendant Allen may be served with process by delivery of the Summons to his residence, 821 Augusta Drive, Lufkin, Texas 75901, or to 1202 Encore Circle, Longview, TX 75605, or wherever found.

5.      Upon information and belief, Defendant Marshall/Harrison is a governmental unit doing business in Texas, with its principal office and registered agent in Harrison County, Texas. Defendant Marshall/Harrison may be served with process by delivery of the Summons to its registered agents, Mr. Kenneth Snyder, Acting City Manager, at 401 South Alamo Blvd, Suite

205, Marshall, Texas 75670, or wherever found, or Ms. Lisa Agnor, City Secretary, at 401 South Alamo Blvd, Marshall, Texas 75670 or wherever found.

## II.
## JURISDICTION AND VENUE

6.      This Court has jurisdiction pursuant to 42 U.S.C. §1395dd because the matters in controversy arise under the laws and rules of the United States as noted below. Federal question jurisdiction is also conferred on this Court by 28 U.S.C. §1331 because this action arises under the United States Constitution and laws, specifically, Plaintiff asserts a cause of action herein created by the Emergency Medical Treatment and Labor Act ("EMTALA"), 42 U.S.C. §1395dd. Additionally, the matter in controversy exceeds, exclusive of interest and costs, the sum or value of seventy-five thousand dollars ($75,000.00) as required by 28 U.S.C. § 1331. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over all other various state and common law claims Plaintiff asserts against Defendants. Plaintiff's state law claims are so related to his EMTALA claim over which the Court has original jurisdiction that his state and common law claims form part of the same case or controversy as his EMTALA claim pursuant to Article 3 of the United States Constitution. As set forth more specifically herein, all of Plaintiff's claims arise from the same transaction, occurrence, or series of transactions or occurrences as Plaintiff's causes of action under 42 U.S.C. §1395dd, and also are derived from the same common nucleus of operative facts as Plaintiff's causes of action under 42 U.S.C. §1395dd. *See, e.g., Feigler v. Tidex, Inc.*, 826 F.2d 1435, 1439-40 (5th Cir. 1987).

7.      Venue also is properly maintained in this Court under 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the Eastern District of Texas in Harrison County, and the Eastern District is the judicial district in which one or more of the Defendants in this action reside and/or is subject to the Court's personal

jurisdiction with respect to this action. 28 U.S.C. § 1391(b)(1)-(3). Additionally, all Defendants reside in Texas.

## III.
## STATUTORY NOTICE AND COMPLIANCE

8.     Plaintiff, to the extent his claims constitute a healthcare liability claim, has complied with all applicable codes, statutes, and regulations. Plaintiff has tendered a timely and proper medical release and notice of this healthcare liability claim to one or more healthcare providers pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code.

## IV.
## FACTS

9.     At all material times, Defendant Champion operated a business which purported to provide to the public medical services, including but not limited to emergency medical services. At all material times, Logan Taylor was receiving medical and/or health care services and treatment from Defendant Champion or its medical staff, employees, servants, technicians, paramedics, and/or agents who performed services within the course and scope of their duties with Defendant Champion.

10.     At all material times, Defendant Good Shepherd operated a facility which purported to provide to the public medical services, including but not limited to emergency medical services. At all material times, Logan Taylor was receiving medical and/or health care services and treatment from Defendant Good Shepherd or its medical staff, employees, servants, and/or agents, including Defendant Allen, who performed services within the course and scope of his duties with Defendant Good Shepherd. At all material times, Defendant Good Shepherd had the capacity or capability to provide both the medical screening examination that Logan Taylor required upon

presenting to its emergency department, as well as the emergency stabilizing treatment required by Logan's emergency medical condition(s).

11.     At all material times, Defendant Allen held himself out to the public as a competent and qualified emergency department physician. At all material times, Logan Taylor had a physician/patient relationship with Defendant Allen.

12.     At all material times, Defendant Marshall/Harrison conducted an operation which purported to provide to the public medical services, including but not limited to providing medical services to patients while transporting them from one hospital to another. At all material times, Logan Taylor was receiving medical and/or health care services and treatment from Defendant Marshall/Harrison or its medical staff, employees, servants, technicians, paramedics, and/or agents who performed services within the course and scope of their duties with Defendant Marshall/Harrison.

13.     On or about January 2, 2013, Logan Taylor was found unconscious at his home. Upon finding Logan, it was determined that there was no electricity and/or gas supply to Logan's house, causing the house to be without both lighting and heat, and resulting in extremely cold temperatures in the house. As a result of these cold temperatures, among other things, Logan suffered medical condition(s), including but not limited to hypothermia, which, due to a lack of proper diagnosis and treatment, eventually led to the development of gangrene on both of his lower extremities. Ultimately, as a result of the development of gangrene on Logan's lower extremities, both of Logan's lower extremities were amputated.

14.     After Logan was found unconscious on January 2, 2013, Defendant Champion was immediately called to the scene to provide emergency medical services and treatment to Logan, and to transport him somewhere for further care. Upon taking Logan into their care, Defendant

Champion undertook the responsibility to assess and/or diagnose Logan's medical condition(s) and to provide medical services and treatment to him. Defendant Champion also transported Logan to the emergency department of Defendant Good Shepherd. In the course of assessing and/or diagnosing Logan's medical condition(s) and providing medical services and treatment to him, Defendant Champion failed to properly assess and/or diagnose Logan's medical condition(s) as medical condition(s) that, if not properly treated, could lead to the development of gangrene on and amputation of Logan's lower extremities. Defendant Champion also failed to provide proper medical services and treatment to Logan to prevent the development of gangrene on, and the resulting need for amputation of, Logan's lower extremities.

15.    Logan arrived at the emergency department of Defendant Good Shepherd on or about 2:14 p.m. on January 2, 2013. Upon being received by Defendant Good Shepherd, Defendant Allen undertook the responsibility to assess and/or diagnose Logan's medical condition(s) and to provide medical services and treatment to him. On or about 8:25 p.m. on that day, after only 6 (six) hours, Defendants Good Shepherd and Allen wrongly discharged and sent Logan away by improperly transferring him to the Overton Brooks VA Medical Center ("Overton Brooks VA"). In the course of assessing and/or diagnosing Logan's medical condition(s) and providing medical services and treatment to him, Defendants failed to provide Logan with an appropriate medical screening examination to determine whether Logan had emergency medical condition(s), and also failed to stabilize Logan's emergency medical condition(s) prior to improperly transferring him to Overton Brooks VA. Furthermore, Defendants failed to obtain Logan's informed consent prior to improperly transferring him to Overton Brooks VA, and also failed to obtain a physician-signed certification establishing that the medical benefits expected from Logan's transfer to Overton Brooks VA outweighed the risks involved in transferring him.

16.     Around this time Defendant Marshall/Harrison was called to use their ambulance vehicle to provide medical services and treatment to Logan, and to transport him from Defendant Good Shepherd to Overton Brooks VA. Logan was then picked up from Defendant Good Shepherd by Defendant Marshall/Harrison on the evening of January 2, 2013 and taken to Overton Brooks VA. While Logan was in their care, Defendant Marshall/Harrison undertook the responsibility to assess and/or diagnose Logan's medical condition(s) and to provide medical services and treatment to him. In the course of assessing and/or diagnosing Logan's medical condition(s) and providing medical services and treatment to him, Defendant Marshall/Harrison failed to properly assess and/or diagnose Logan's medical condition(s) as medical condition(s) that, if not properly treated, could lead to the development of gangrene on and amputation of Logan's lower extremities. Defendant Marshall/Harrison also failed to provide proper medical services and treatment to Logan to prevent the development of gangrene on, and the resulting need for amputation of, Logan's lower extremities.

17.     Thereafter Logan was admitted to the Overton Brooks VA on or about 8:59 p.m. on the evening of January 2, 2013. Upon Logan's admission to Overton Brooks, Sean Troxclair, M.D. ("Dr. Troxclair") undertook the responsibility to assess and/or diagnose Logan's medical condition(s) and to provide medical services and treatment to him. However, prior to this admission, Defendants had failed to timely and properly assess, diagnose, and treat Logan's condition(s) and, therefore, Defendants' records at transfer did not reflect a proper diagnosis or treatment, which undoubtedly contributed to even further delay in Logan's proper diagnosis and treatment. Logan received medical services and treatment as a patient of Overton Brooks from his admission on January 2, 2013 until his discharge and transfer to the VA Medical Center Dallas ("Dallas VA") on or about January 22, 2013. In the course of assessing and/or diagnosing Logan's

medical condition(s) and providing medical services and treatment to him, Dr. Troxclair failed to properly assess and/or diagnose Logan's medical condition(s) as medical condition(s) that, if not properly treated, could lead to the development of gangrene on and amputation of Logan's lower extremities. Dr. Troxclair also failed to provide proper medical services and treatment to Logan to prevent the development of gangrene on Logan's lower extremities. As a result, while a patient at Overton Brooks, Logan developed gangrene on both of his lower extremities.

18.     Logan was admitted to Dallas VA on or about January 22, 2013 for treatment of the gangrene that had developed on his lower extremities. Dallas VA and Sameer Chaudhry, M.D. ("Dr. Chaudhry") had notice that such development of gangrene necessitated immediate amputation of both of Logan's lower extremities. Upon Logan's admission to Dallas VA, Dr. Chaudhry undertook the responsibility to assess and/or diagnose Logan's medical condition(s) and to provide medical services and treatment to him. In the course of assessing and/or diagnosing Logan's medical condition(s) and providing medical services and treatment to him, Dr. Chaudhry failed to properly assess and/or diagnose Logan's medical condition(s). Dr. Chaudhry also failed to provide proper medical services and treatment to Logan to treat the gangrene on his lower extremities. As a result, the gangrene on Logan's lower extremities spread, becoming more pervasive, and Logan's overall medical condition worsened.

19.     On February 11, 2013, Dallas VA and Dr. Chaudhry discharged Logan, without having provided him the medical treatment that he needed, to The Highlands of Dallas ("The Highlands"), a nursing home on Forest Lane in Dallas, Texas. At this point, both of Logan's feet had worsened to the point of becoming completely gangrenous, including but not limited to the sections from the toes to the ankles. After being at The Highlands for only a short time, Logan was

sent to Dallas Medical Center where he received necessary emergency medical treatment, including below-knee amputations of both his right and left gangrenous lower extremities.

20.      As a direct result of Defendants' negligence in examining and treating Logan Taylor, Logan developed gangrene on his lower extremities leading to the eventual need for amputation of both extremities, and prompting him to obtain emergency surgery from Dallas Medical Center. He has experienced severe physical pain, emotional distress, and mental anguish, and has sustained permanent impairment and bodily disfigurement. He has been caused to incur substantial medical and related nursing home charges and expenses in the past and will likely continue to incur substantial medical and nursing home expenses in the future.

## V.
## CAUSES OF ACTION AGAINST DEFENDANT CHAMPION

### Direct and Vicarious Liability

21.      Plaintiff repeats and realleges paragraphs 1 through 20 as if fully set forth herein.

22.      Defendant Champion is responsible for Logan Taylor's injuries under the doctrines of corporate negligence, apparent or an ostensible agency, agency by estoppel, violation of non-delegable duties, and respondeat superior.

23.      Defendant Champion is vicariously liable for the negligence of its physicians, nurses, employees, technicians, paramedics, servants, and/or agents who are its actual agents, apparent agents, ostensible agents, and agents by estoppel, acts and/or omissions.

24.      Defendant Champion is vicariously liable for the actions, inactions, and negligence of all personnel employed and/or supervised by it. Defendant Champion is responsible for acts of physicians, nurses, technicians, paramedics, specialists, and non-specialists with whom Defendant Champion contracted, to whom it referred, and/or whom it called to assist or provide care to Logan Taylor.

**Negligence**

25.     Plaintiff repeats and realleges paragraphs 1 through 24 as if fully set forth herein.

26.     At all material times, Defendant Champion had a duty under Texas law to exercise ordinary care and act as a medical facility of reasonable and ordinary prudence under the same or similar circumstances in owning, operating, managing, supervising, and/or providing medical and health care services, products, diagnosis, assessment, care, and treatment to and for Logan Taylor's condition(s).

27.     Defendant Champion, independently and by and through its employees, agents, and representatives, breached its duty of care to Logan Taylor by committing one or more acts or omissions of negligence which were a proximate cause of the occurrence, injuries, and damages set forth herein, as follows:

(a)     Failing to timely, properly, and adequately supervise the quality of medical diagnosis, assessment, care, and treatment to and for Logan Taylor's illness(es) and/or condition(s);

(b)     Failing to provide timely, proper, and adequate medical, nursing, paramedic, EMT, or health care provider diagnosis, assessment, care, and treatment to and for Logan Taylor's illness(es) and/or condition(s);

(c)     Failing to follow appropriate medical practices;

(d)     Failing to properly train and supervise the doctors, nurses, paramedics, technicians, employees, and staff responsible for Logan Taylor's care and treatment; and

(e)     Failing to promulgate and ensure compliance with written policies and procedures for properly assessing and obtaining treatment for patients such as Logan Taylor in an appropriate fashion.

28.     Each of the foregoing acts and omissions of Defendant Champion, singularly or in combination with others, proximately caused the injuries to Logan Taylor as set forth herein.

**Negligent Hiring and Supervision**

29.     Plaintiff repeats and realleges paragraphs 1 through 28 as if fully set forth herein.

30.     Defendant Champion owed a duty to Logan Taylor to exercise ordinary care in the hiring, use, and retention of doctors, nurses, paramedics, technicians, employees, staff, and other EMS personnel.

31.     Defendant Champion breached its duty and was negligent in employing personnel who were untrained, unqualified, uncertified, and incompetent to perform the duties for which they were hired. Defendant Champion knew or should have known that its employees would perform their duties in a careless and negligent manner.

32.     As a direct and proximate result of Defendant Champion's negligent hiring and supervision of its doctors, nurses, technicians, staff, and other employees and personnel, Logan Taylor suffered injury and damages as set forth herein.

**VI.**

**CAUSES OF ACTION AGAINST DEFENDANT GOOD SHEPHERD**

**EMTALA**

33.     Plaintiff repeats and realleges paragraphs 1 through 32 as if fully set forth herein.

34.     In addition to his pendant state law claims set forth below, Plaintiff brings a cause of action against Defendant Good Shepherd pursuant to EMTALA, 42 U.S.C. §1395dd, and the

rules promulgated thereunder, which provides Plaintiff with a private cause of action against Defendant Good Shepherd.

35.     Defendant Good Shepherd is a system of hospitals and participating hospitals and has a hospital emergency department within the meaning of §§ 1395dd(a)-(e). At all material times, Defendant Good Shepherd was required by EMTALA to provide Logan Taylor with an appropriate medical screening examination and to stabilize Logan's medical condition(s). *See* §§ 1395dd(a), (b). Furthermore, EMTALA prohibited the improper transfer of Logan Taylor to a different hospital that Defendant Good Shepherd engaged in. *See* § 1395dd(c)

36.     On January 2, 2013 at approximately 2:14 p.m. Logan Taylor arrived at the emergency department of Defendant Good Shepherd requesting examination and treatment of his medical condition(s), including his emergency medical condition(s). Defendants Good Shepherd and Allen failed to provide Logan Taylor with a medical screening examination within the capability of the hospital's emergency department to determine whether or not emergency medical condition(s) existed. Furthermore, Logan Taylor was not given the same medical screening examination as Defendant Good Shepherd regularly provided to patients with the same or similar signs, symptoms, and/or emergency medical conditions as Logan Taylor. Thus, Defendant Good Shepherd treated Logan Taylor disparately from other patients with the same or similar signs, symptoms, and/or emergency medical conditions as those of Logan Taylor.

37.     Additionally, Logan Taylor's medical condition(s) was, at the time he was seen by Defendant Allen while admitted to Good Shepherd's emergency department, an "emergency medical condition". *See* §§ 1395dd(e)(1)(A)(i)-(iii). As such, Logan Taylor's emergency medical condition(s), at the time he was discharged from Defendant Good Shepherd's emergency department, placed Logan Taylor's health in serious jeopardy. *Id*.

38.     Good Shepherd, through its physicians, nurses, employees, technicians, servants, staff members, and/or agents, including Defendant Allen, had actual knowledge that Logan Taylor had an emergency medical condition(s), and through this actual knowledge had determined that such condition(s) existed prior to discharging him from its emergency department. Despite this knowledge, Defendants Good Shepherd and Allen failed to stabilize Logan Taylor's emergency medical condition(s) before discharging him from its emergency department at approximately 8:25 p.m. on January 2, 2013, and, indeed, discharged him in spite of his unstablized emergency medical condition(s). Specifically, Defendant Good Shepherd failed to provide proper medical services and treatment to ensure and/or establish that no development of gangrene on Logan Taylor's lower extremities was likely, within reasonable medical probability, to occur as the result of his discharge. *See* §§ 1395dd(e)(3). Rather than causing the emergency medical condition(s) that Logan Taylor was in to be adequately treated by a doctor, Defendant Good Shepherd discharged Logan Taylor from its emergency department without providing stabilizing services and treatment or stabilizing his condition(s). As such, Defendant Good Shepherd violated EMTALA. *See* §§ 1395dd(b)(1), (c), (e)(4).

39.     In addition to violating EMTALA by failing to provide Logan Taylor with an appropriate medical screening examination, and by failing to stabilize Logan's emergency medical condition(s), Defendant Good Shepherd also violated EMTALA by improperly transferring Logan to a different hospital without first obtaining Logan's informed consent or a physician-signed certification establishing that the medical benefits expected from Logan's transfer outweighed the risks involved prior to transferring him. *See* § 1395dd(c).

40.     Logan Taylor has suffered personal harm in the past, and in all reasonable probability, will continue to suffer personal harm in the future, including severe and permanent

personal injuries, as defined by Texas law and as more fully set forth herein. *See* § 1395dd(d)(2)(A). This harm has been caused as a direct result of Defendant Good Shepherd's violations of EMTALA in an amount exceeding this Court's minimum jurisdictional limits, as outlined elsewhere herein. Due to Defendant Good Shepherd's violations of EMTALA, Plaintiff, as Next Friend of Logan Taylor, is entitled pursuant to EMTALA to damages as set forth herein. *See* § 1395dd(d)(2)(A).

## Direct and Vicarious Liability

41.     Plaintiff repeats and realleges paragraphs 1 through 40 as if fully set forth herein.

42.     Defendant Good Shepherd is responsible for Logan Taylor's injuries under the doctrines of corporate negligence, apparent or an ostensible agency, agency by estoppel, violation of non-delegable duties, and respondeat superior.

43.     Defendant Good Shepherd is vicariously liable for the negligence of its physicians, nurses, employees, technicians, servants and/or agents who are its actual agents, apparent agents, ostensible agents, and agents by estoppel, acts and/or omissions.

44.     Defendant Good Shepherd is vicariously liable for the actions, inactions, and negligence of all personnel employed and/or supervised by it. Defendant Good Shepherd is responsible for acts of physicians, nurses, technicians, specialists, and non-specialists with whom Defendant Good Shepherd contracted, to whom it referred, and/or whom it called to assist or provide care to Logan Taylor.

## Negligence

45.     Plaintiff repeats and realleges paragraphs 1 through 44 as if fully set forth herein.

46.     At all material times, Defendant Good Shepherd had a duty under Texas law to exercise ordinary care and act as a medical facility of reasonable and ordinary prudence under the

same or similar circumstances in owning, operating, managing, supervising, and/or providing medical and health care services, products, diagnosis, assessment, care, and treatment to and for Logan Taylor's condition(s).

47.     Defendant Good Shepherd, independently and by and through its employees, agents and representatives, breached its duty of care to Logan Taylor by committing one or more acts or omissions of negligence which were a proximate cause of the occurrence, injuries, and damages set forth herein, as follows:

(a)     Failing to timely, properly, and adequately supervise the quality of medical diagnosis, assessment, care, and treatment to and for Logan Taylor's illness(es) and/or condition(s);

(b)     Failing to provide timely, proper, and adequate medical, nursing, or health care provider diagnosis, assessment, care, and treatment to and for Logan Taylor's illness(es) and/or condition(s);

(c)     Failing to follow appropriate medical practices;

(d)     Failing to properly train and supervise the doctors, nurses, technicians, employees, and staff responsible for Logan Taylor's care and treatment; and

(e)     Failing to promulgate and ensure compliance with written policies and procedures for properly assessing and obtaining treatment for patients such as Logan Taylor in an appropriate fashion.

48.     Each of the foregoing acts and omissions of Defendant Good Shepherd, singularly or in combination with others, proximately caused the injuries to Logan Taylor as set forth herein.

**Negligent Hiring and Supervision**

49.     Plaintiff repeats and realleges paragraphs 1 through 48 as if fully set forth herein.

50.     Defendant Good Shepherd owed a duty to Logan Taylor to exercise ordinary care in the hiring, use, and retention of doctors, nurses, technicians, employees, staff, and other EMS personnel.

51.     Defendant Good Shepherd breached its duty and was negligent in employing personnel who were untrained, unqualified, uncertified, and incompetent to perform the duties for which they were hired. Defendant Good Shepherd knew or should have known that its employees would perform their duties in a careless and negligent manner.

52.     As a direct and proximate result of Defendant Good Shepherd's negligent hiring and supervision of its doctors, nurses, technicians, staff, and other employees and personnel, Logan Taylor suffered injury and damages as set forth herein.

## VII.
## <u>CAUSE OF ACTION AGAINST DEFENDANT ALLEN</u>

**Negligence**

53.     Plaintiff repeats and realleges paragraphs 1 through 52 as if fully set forth herein.

54.     At all material times, Defendant Allen had a duty under Texas law to exercise ordinary care and act as a physician of reasonable and ordinary prudence under the same or similar circumstances in his diagnosis, assessment, care, and treatment of the illness(es) and condition(s) of Logan Taylor.

55.     Defendant Allen breached his duty of care to Logan Taylor by committing one or more acts or omissions of negligence which were a proximate cause of the occurrence, injuries, and damages set forth herein, as follows:

    (a)     Failing to timely, properly, and adequately diagnose, assess, or recognize Logan Taylor's illness(es) and/or condition(s);

    (b)     Failing to assist and/or provide the medical diagnosis, care, and treatment to and for Logan Taylor's illness(es) and/or condition(s) in a timely, proper, and effective manner;

    (c)     Failing to follow appropriate medical practices; and

    (d)     Failing to comply with written policies and procedures for properly assessing and obtaining treatment for patients such as Logan Taylor in an appropriate fashion.

56.    Each of the foregoing acts and omissions of Defendant Allen, singularly or in combination with others, proximately caused the injuries to Logan Taylor as set forth herein.

## VIII.
## CAUSES OF ACTION AGAINST DEFENDANT MARSHALL/HARRISON

57.    Plaintiff's causes of action against Defendant Marshall/Harrison arise under the Texas Tort Claims Act (TTCA), Texas Civil Practice & Remedies Code chapter 101. The Court has jurisdiction over these claims because the TTCA waives Defendant's sovereign immunity for claims involving personal injury caused by negligent operation or use of a motor-driven vehicle or motor-driven equipment by the Defendant's employee(s), if that employee(s) would be personally liable to the Plaintiff under Texas law. TEX. CIV. PRAC. & REM. CODE §101.021(1). The TTCA also waives Defendant's sovereign immunity for claims involving personal injury caused by a wrongful act, omission, or negligence concerning the condition and/or use of tangible personal property by the Defendant's employee(s), if that employee(s) would be personally liable to the Plaintiff under Texas law. Plaintiff's claims, as set out more fully herein, involve personal injuries caused by the negligent operation or use of a motor-driven vehicle by Defendant's employee(s),

and/or caused by wrongful act(s), omission(s), or negligence concerning the condition and/or use of tangible personal property by Defendant's employee(s). Furthermore both Defendant Marshall/Harrison and Defendant's employee(s) would be personally liable to the Plaintiff under Texas law if they were private persons. Additionally, Defendant Marshall/Harrison's employee(s) was at all times material and relevant acting in the course and scope of his employment and/or official duties and in furtherance of the duties of his office and/or employment with Defendant Marshall/Harrison. Defendant Marshall/Harrison's employee(s) was also acting as the authorized agent(s), servant(s) and/or employee(s) of Defendant and within the scope of his authority as Defendant's authorized agent(s), servant(s) and/or employee(s). For these reasons sovereign immunity is waived under the TTCA.

58.     Plaintiff gave Defendant Marshall/Harrison notice as required by section 101.101 (a) of the TTCA.

**Direct and Vicarious Liability**

59.     Plaintiff repeats and realleges paragraphs 1 through 58 as if fully set forth herein.

60.     Defendant Marshall/Harrison is responsible for Logan Taylor's injuries under the doctrines of corporate negligence, apparent or an ostensible agency, agency by estoppel, violation of non-delegable duties, and respondeat superior.

61.     Defendant Marshall/Harrison is vicariously liable for the negligence of its physicians, nurses, employees, technicians, paramedics, servants and/or agents who are its actual agents, apparent agents, ostensible agents, and agents by estoppel, acts and/or omissions.

62.     Defendant Marshall/Harrison is vicariously liable for the actions, inactions, and negligence of all personnel employed and/or supervised by it. Defendant Marshall/Harrison is responsible for acts of physicians, nurses, technicians, paramedics, specialists, and non-specialists

with whom Defendant Marshall/Harrison contracted, to whom it referred, and/or whom it called to assist or provide care to Logan Taylor.

## Negligence

63.     Plaintiff repeats and realleges paragraphs 1 through 62 as if fully set forth herein.

64.     Plaintiff's causes of action against Defendant Marshall/Harrison for negligence arise out of the negligent operation and use of a motor-driven vehicle, specifically negligent use of its ambulance vehicle, as well as out of negligent misuse of tangible personal property. Defendant Marshall/Harrison negligently used their ambulance vehicle and/or negligently misused tangible personal property to assess, diagnose, and treat Logan Taylor's medical condition(s), and to provide medical services and treatment to Logan Taylor while transporting Logan Taylor from Defendant Good Shepherd to Overton Brooks VA.

65.     At all material times, Defendant Marshall/Harrison had a duty under Texas law to exercise ordinary care and act as a medical facility of reasonable and ordinary prudence under the same or similar circumstances in owning, operating, managing, supervising, and/or providing medical and health care services, products, diagnosis, assessment, care, and treatment to and for Logan Taylor's condition(s).

66.     Defendant Marshall/Harrison, independently and by and through its employees, agents and representatives, breached its duty of care to Logan Taylor by negligently using their ambulance vehicle to assess and diagnose Logan Taylor's medical condition(s), and to provide medical services and treatment to Logan Taylor while transporting Logan Taylor from Defendant Good Shepherd to Overton Brooks VA. Specifically, Defendant Marshall/Harrison negligently operated and used its ambulance vehicle by committing one or more acts or omissions of

negligence during the use of its ambulance vehicle which were a proximate cause of the occurrence, injuries, and damages set forth herein, as follows:

(a)     Failing to timely, properly, and adequately supervise the quality of medical diagnosis, assessment, care, and treatment to and for Logan Taylor's illness(es) and/or condition(s);

(b)     Failing to provide timely, proper, and adequate medical, nursing, paramedic, EMT, or health care provider diagnosis, assessment, care, and treatment to and for Logan Taylor's illness(es) and/or condition(s);

(c)     Failing to follow appropriate medical practices;

(d)     Failing to have properly trained and failure to properly supervise the doctors, nurses, technicians, paramedics, employees, and staff responsible for Logan Taylor's care and treatment; and

(e)     Failing to have promulgated and failure to ensure compliance with written policies and procedures for properly assessing and obtaining treatment for patients such as Logan Taylor in an appropriate fashion.

67.     Each of the foregoing acts and omissions of Defendant Marshall/Harrison constitute negligent operation and use of a motor-driven vehicle and/or tangible personal property therein by Defendant Marshall/Harrison, and singularly or in combination with others, proximately caused the injuries to Logan Taylor as set forth herein.

**Negligent Hiring and Supervision**

68.     Plaintiff repeats and realleges paragraphs 1 through 67 as if fully set forth herein.

69.     Defendant Marshall/Harrison owed a duty to Logan Taylor to exercise ordinary care in the hiring, use, and retention of doctors, nurses, technicians, paramedics, employees, staff,

and other Ambulance Service personnel.

70.     Defendant Marshall/Harrison breached its duty and was negligent in employing personnel who were untrained, unqualified, uncertified, and incompetent to perform the duties for which they were hired. Defendant Marshall/Harrison knew or should have known that its employees would perform their duties in a careless and negligent manner.

71.     As a direct and proximate result of Defendant Marshall/Harrison's negligent hiring and supervision of its doctors, nurses, technicians, staff, and other employees and personnel, Logan Taylor suffered injury and damages as set forth herein.

## IX.
## DAMAGES

72.     Plaintiff repeats and realleges paragraphs 1 through 71 as if fully set forth herein.

73.     As a result of Defendants' negligence and other harmful conduct, including violations of EMTALA, set forth hereinabove, Plaintiff has sustained medical expenses and extraordinary emotional pain and mental anguish, impairment, scarring, and deformity, and Plaintiff has brought this suit against Defendants for the damages he has suffered as a result of Defendants' conduct.

74.     Pursuant to Section 74.053 of the Texas Civil Practices and Remedies Code, Plaintiff does not specify an amount claimed as damages.

75.     The damages sought herein are within the jurisdictional limits of the Court and Plaintiff seeks monetary relief over $1,000,000 plus a judgment for all other relief to which Plaintiff is entitled. The amount of monetary relief actually awarded, however, will ultimately be determined by the trier of fact.

## X.

## CONDITIONS PRECEDENT

76.     All conditions precedent to Plaintiff's claims have been performed, have occurred,

or have been waived by Defendants as required by Federal Rule of Civil Procedure 9.

## XI.

## DEMAND FOR JURY TRIAL

77.     Plaintiff asserts his rights under the Seventh Amendment to the U.S. Constitution

and respectfully demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury

on all issues.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Robert Taylor, as Next Friend of

Logan J. Taylor, prays that Defendants appear and answer herein, and that upon final hearing, he

have judgment against Defendants, jointly and severally, for damages, together with pre- and post-

judgment interest at the highest legal rates, costs of court, and all such other and further relief,

general and special, legal and equitable, to which he may show himself justly entitled.

Respectfully submitted,


_s/ D. Bradley Kizzia_
**D. BRADLEY KIZZIA**
**Lead Attorney**
State Bar No. 11547550
brad@brownfoxlaw.com
**MICHAEL A. HEWITT**
State Bar No. 24092510
mhewitt@brownfoxlaw.com
**BROWN FOX KIZZIA & JOHNSON PLLC**
750 N. St. Paul Street, Suite 1320
Dallas, Texas 75201
(214) 613-3350
Fax: (214) 613-3330

**ATTORNEYS FOR PLAINTIFF**


Dated this 20th day of January, 2015.